IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAVON GREEN, on behalf of herself and others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>POST CONSUMER BRANDS, LLC and THE J.M. SMUCKER COMPANY,<br><br>　　　　　Defendants. | 2:24-cv-06527-MRP |

PLAINTIFF'S UNOPPOSED MOTION FOR
"PRELIMINARY APPROVAL" OF CLASS
ACTION SETTLEMENT AND OTHER RELATED RELIEF

　　In this class action lawsuit, Plaintiff Shavon Green ("Plaintiff") alleges that Defendants Post Consumer Brands, LLC ("Post") and The J.M. Smucker Company ("Smucker") (together "Defendants") violated the Pennsylvania Minimum Wage Act ("PMWA") by failing to pay her and other hourly employees overtime wages for pre-shift and post-shift activities at Defendants' Bloomsburg, PA pet food manufacturing facility ("Bloomsburg facility"). *See generally* Doc. 1-3. Defendants deny liability. Yet, like Plaintiff, Defendants have agreed to settle the dispute in order to avoid the risk, delay, and expense of continued litigation. As is widely known, class action settlements are favored because they conserve "substantial judicial resources" and enable parties to "gain significantly from avoiding the costs and risks of a lengthy and complex trial." *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

　　The Parties' Class Action Settlement Agreement ("Agreement") is attached and covers Plaintiff and approximately 672 hourly employees who were employed by Smucker and 627

hourly employees[1] who were employed by Post at the Bloomsburg facility and who worked at least one week in which they were paid at least 40 hours between November 1, 2021 and September 9, 2025, according to Defendants' payroll data.  *See* ECF No. 23-1 (Agreement) at pp. 2-4 (defining "Post Class Member", "Smucker Class Member" and "Eligible Week") & Ex. A.

Meanwhile, the settlement requires Smucker to make a total payment of up to $295,000 plus any associated employer-side taxes, and proposes the following distribution (subject to Court approval): **(i)** $197,650 will be paid to the 672 Class Members employed by Smucker; and **(ii)** $97,350 will be paid to Plaintiff's lawyers for attorneys' fees, costs, and settlement administration costs, and a service award to Plaintiff.[2]  *See* Agreement, Doc. 23-1 at p. 4 (defining "Smucker Net Settlement Fund") and ¶ 12.

The settlement requires Post to make a total payment of up to $600,000 plus any associated employer-side taxes, and proposes the following distribution (subject to Court approval): **(i)** $402,000 will be paid to the 627 Class Members employed by Post; and **(ii)** $198,000 will be paid to Plaintiff's lawyers for attorneys' fees, costs, and settlement administration costs, and a service award to Plaintiff.[3]  *See* Doc. 23-1 at p. 2 (defining "Post Net Settlement Fund") and ¶ 12.

The settlement is the result of extensive, arms-length bargaining between the Parties and represents an excellent result for class members considering the relatively narrow parameters of this litigation, which concerns the compensability of alleged time spent performing various

---

[1] These numbers include Plaintiff.
[2] Plaintiff is requesting a service award of up to $6,000, which will be paid from the amount awarded to Plaintiff's lawyers in connection with Smucker's payment under the settlement.  *See* Doc. 23-1 at ¶ 12.
[3] Plaintiff is requesting a service award of up to $14,000, which will be paid from the amount awarded to Plaintiff's lawyers in connection with Post's payment under the settlement.  *See* Doc. 23-1 at ¶ 12.

activities at the beginning and end of the workday. In exchange for these payments, class members who do not exclude themselves are bound by a release that is narrowly tailored to this litigation. *See id.* at p. 3 (defining "Released Claims" and "Released Parties"). Moreover, Defendants' settlement payments are non-reversionary, *see id.* at ¶ 4, and class members are not required to return a claim form in order to recover money, *see id.* at ¶ 10.[4]

Now that the Agreement has been executed, it must be reviewed for fairness per Federal Rule of Civil Procedure 23's "two-stage" process, which has been described as follows:

> Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make "a preliminary fairness evaluation." If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement. If the court concludes that the settlement is "fair, reasonable and adequate, the settlement is given final approval.

*In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014) (Brody, J.) (internal citations omitted).

Under Rule 23, preliminary approval is appropriate if, at the post-notice final approval stage, the Court "will likely be able to": (i) give final approval of the settlement under the criteria described in Rule 23(e)(2) and (ii) certify the settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii). Here, as discussed in the accompanying brief, both of these requirements are satisfied.

Moreover, as discussed in the accompanying brief, the proposed notice form and

---

[4] *See Roes v. SFBSC Management, LLC*, 944 F.3d 1035, 1058-59 (9th Cir. 2019) (describing the "perverse incentives" associated with reversionary, claims-made settlements).

protocols constitute "the best notice that is practicable" under the criteria described in Civil Rule 23(c)(2)(B), and the undersigned law firm is qualified to be appointed interim class counsel pursuant to Civil Rule 23(g)(3).

**WHEREFORE**, Plaintiff respectfully asks the Court to grant this motion and enter the accompanying proposed order.

Date:  December 1, 2025            Respectfully,

/s/ Mark J. Gottesfeld
Pete Winebrake
Mark J. Gottesfeld
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*Plaintiff's Counsel*