## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAVON GREEN, on behalf of herself and others similarly situated, | |
| Plaintiff, | 2:24-cv-06527-MRP |
| v. | |
| POST CONSUMER BRANDS, LLC and THE J.M. SMUCKER COMPA2NY, | |
| Defendants. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR "PRELIMINARY APPROVAL" OF CLASS ACTION SETTLEMENT AND OTHER RELATED RELIEF**

Shavon Green ("**Plaintiff**") seeks *preliminary* approval of the settlement of this class action lawsuit, which alleges that Post Consumer Brands, LLC ("**Post**") and The J.M. Smucker Company ("**Smucker**") (collectively "**Defendants**") violated the Pennsylvania Minimum Wage Act ("**PMWA**"). Specifically, Plaintiff alleges that Defendants violated the PMWA by failing to pay Plaintiff and other hourly employees overtime wages for time spent performing pre- and post-shift activities at their Bloomsburg, PA pet food manufacturing facility ("**the Bloomsburg facility**"). *See generally* Doc. 1-3.

Defendants deny liability. However, like Plaintiff, they have settled to avoid the risk, delay, and expense of continued litigation.

The applicable "Class and Collective Action Settlement Agreement" ("**Agreement**") is attached. *See* Doc. 23-1. As indicated, the settlement covers Plaintiff and approximately 671 hourly employees who worked for Smucker and approximately 626 hourly employees who

worked for Post at the Bloomsburg facility between November 1, 2021 to September 9, 2025.[1]

We refer to these individuals as "**Class Members,**" and we refer to the November 1, 2021 to

September 9, 2025 time period as the "**Relevant Period.**"

Under Federal Rule of Civil Procedure 23, class action settlements are subjected to a

"two-stage" approval process, which this Court has described as follows:

> Review of a proposed class action settlement typically proceeds in two
> stages. At the first stage, the parties submit the proposed settlement to the
> court, which must make "a preliminary fairness evaluation." If the
> proposed settlement is preliminarily acceptable, the court then directs that
> notice be provided to all class members who would be bound by the
> proposed settlement in order to afford them an opportunity to be heard on,
> object to, and opt out of the settlement. At the second stage, after class
> members are notified of the settlement, the court holds a formal fairness
> hearing where class members may object to the settlement. If the court
> concludes that the settlement is "fair, reasonable and adequate," the
> settlement is given final approval.

*In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014)

(internal citations omitted); *accord Lundeen v. 10 West Ferry Street Operations LLC*, 156 F.4th

332, __, 2025 U.S. App. LEXIS 26901 (3d Cir. Oct. 16, 2025).

We are at the ***preliminary*** approval stage. Under Civil Rule 23, preliminary approval is

warranted if the Court determines that it "will likely be able to: (i) approve the proposal under

Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ.

P. 23(e)(1)(B)(i)-(ii). As discussed herein, both of these requirements are satisfied. *See* pp. 8-18

*infra*. As such, preliminary approval of the settlement is warranted.

In addition, the Court should approve the proposed "Notice of Settlement" form for

distribution to the Class Members per Civil Rule 23(c)(2)(B), *see* p. 19 *infra*, and should appoint

---

[1]    There is overlap between the identities of these individuals as many individuals who were
employed by Smucker continued working for Post.

Winebrake & Santillo, LLC ("W&S") to serve as "interim class counsel" per Civil Rule 23(g)(3), *see* pp. 19-20 *infra*.

## I.    BACKGROUND

### A.    Plaintiff's Merits Theory.

Plaintiff filed her complaint in the Philadelphia Court of Common Pleas in November 2024, alleging that Defendants violated the PMWA.  *See* Doc. 1-3.  Defendants thereafter removed the case to this Court under the Class Action Fairness Act.  *See* Doc. 1.

Plaintiff worked as an hourly employee at the Bloomsburg facility and was employed by Smucker and Post.  Smucker operated the Bloomsburg facility prior to approximately April 2023, and Post operated the facility after April 2023.

Plaintiff contends that Defendants violated the PMWA by failing to pay overtime wages for time associated with certain work activities arising at the beginning and end of the workday. *See* Doc. 1-3 at ¶¶ 11-13, 28.  These alleged activities primarily included walking to and from time clocks/assigned work locations; and gathering, donning, and doffing uniforms.  (We will refer to unpaid time associated with pre- and post-shift activities as "**pre- and post-shift time**"). Plaintiff contends that pre- and post-shift time is compensable under the PMWA.  *See*, *e.g.*, *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191, 204 (Pa. 2021) (discussing compensable "hours worked" under PMWA).

If, as Plaintiff asserts, pre- and post-shift time constitutes "hours worked" under the PMWA, then it must be included in employees' total weekly hours in calculating overtime pay. The PMWA requires that employees receive overtime wages "not less than one and one-half times" the employee's regular pay rate for all hours worked over 40 per week.  *See* 43 P.S. § 333.104(c).  Relying on this provision, Plaintiff seeks unpaid overtime wages for pre- and post-

shift time.  *See* Doc. 1-3 at Count I.  Defendants maintain that this time is not compensable and/or that one or both Defendants paid employees for this time.  *See* Docs. 11-12.

As mentioned above, the lawsuit covers the time period between November 1, 2021[2] and September 9, 2025.  The Parties agree that, in addition to Plaintiff, this lawsuit covers approximately 671 Class Members employed by Smucker and approximately 626 Class Members employed by Post.[3]  *See* Declaration of Mark Gottesfeld ("Gottesfeld Decl.") (Doc. 23-2) at ¶ 20.  There are approximately 26,179 Eligible Weeks pertaining to Smucker Class Members and approximately 31,559 Eligible Weeks pertaining to Post Class Members.  *See id.*

### B.    Damages

The Parties agreed to attend an early mediation in this matter with Michael Russell, an experienced wage-and-hour class action mediator.[4]  Prior to the mediation, Defendants produced payroll data and timekeeping data for the Class Members, numerous policy documents concerning Defendants' compensation policies, and collective bargaining agreements.  Additionally, Defendants agreed to a site visit wherein Plaintiff's counsel informally measured the walk-times between the facility entrance area and the time clocks and observed the locker rooms and the various departments.  Based on this data and information, Plaintiff's counsel was able to conduct a detailed classwide damages model.

Plaintiff's counsel engaged a data analyst, Liesl M. Fox, Ph.D., to conduct a damages analysis.  As part of that analysis, Dr. Fox calculated the potential unpaid overtime damages

---

[2]    Three years prior to the commencement of this action per the PMWA's three-year limitations period.  *See Garcia v. Vertical Screen, Inc.*, 580 F. Supp. 3d 79, 91 n.7 (E.D. Pa. 2022).

[3]    Under the settlement, "Eligible Weeks" means each week in which a Class member was credited with working 40 or more hours (exclusive of vacation, sick or other leave time) according to Defendants' payroll data during the Relevant Period.

[4]    *See https://milesmediation.com/neutrals/michael-russell/*

corresponding with the possible time ranges associated with the alleged pre- and post-shift time. This damages analysis was shared with defense counsel. Post also conducted a time-study that measured the purported pre- and post-shift time, and the results of this time-study were shared with Plaintiff's counsel.

### C.    Settlement Discussions.

Following the data exchange and analysis described above, the parties' counsel provided mediator Russell with competing settlement memoranda setting forth their views of the case and potential damages. Following this exchange, the Parties and their counsel attended a full-day mediation with mediator Russell on September 9, 2025 and subsequently reached a settlement.

### D.    The Settlement Terms.

The settlement requires **Smucker** to make a total payment of up to $295,000 plus any associated employer-side taxes, and proposes the following distribution (subject to Court approval): **(i)** $197,650 will be paid to the 672 Class Members employed by Smucker; and **(ii)** $97,350 will be paid to W&S for attorneys' fees, costs, and settlement administration costs, and a service award to Plaintiff.[5] *See* Agreement, Doc. 23-1 at p. 4 (defining "Smucker Net Settlement Fund") and ¶ 12.

Meanwhile, the settlement requires **Post** to make a total payment of up to $600,000 plus any associated employer-side taxes, and proposes the following distribution (subject to Court approval): **(i)** $402,000 will be paid to the 627 Class Members employed by Post; and **(ii)** $198,000 will be paid to W&S for attorneys' fees, costs, and settlement administration costs, and

---

[5]    Plaintiff is requesting a service award of up to $6,000, which will be paid from the amount awarded to Plaintiff's lawyers in connection with Smucker's payment under the settlement. *See* Doc. 23-1 at ¶ 12.

a service award to Plaintiff.[6]  *See* Doc. 23-1 at p. 2 (defining "Post Net Settlement Fund") and ¶ 12.

If the Court disapproves any portion of the requested attorney's fees/expenses, the disapproved monies will enhance the payments to Class Members.  *See id.* at pp. 2 and 4 (defining "Post Net Settlement Fund" and "Smucker Net Settlement Fund").

The proposed settlement class is defined as all hourly paid employees, including Plaintiff, at the Bloomsburg facility who worked at least one "Eligible Week" which is defined as each week between November 1, 2021 and September 9, 2025 during "which a Class Member was credited with working (40) or more hours (exclusive of vacation, sick or other leave time) according to Defendants' payroll data.  *See id.* at pp. 2 and 4 (defining "Post Class Member", "Smucker Class Member" and "Eligible Week").  The Parties agree that this lawsuit covers approximately 672 Class Members employed by Smucker and approximately 627 Class Members employed by Post.  *See* Gottesfeld Decl. (Doc. 23-2) at ¶ 20.

Each Class Member will share in the settlement proceeds proportional to and based on the number of Eligible Weeks that he/she worked for Smucker and/or Post.  *See* Doc. 23-1 at pp. 3-4 (defining "Post Payment Amount" and "Smucker Payment Amount.").

**E.    The Notice and Payment Process.**

If this settlement is preliminarily approved, ILYM Group, Inc.[7] ("the Administrator") will mail to each Class Member a detailed notice form that describes the litigation and the settlement and is "individualized" to inform each Class Member of his/her expected Payment

---

[6]    Plaintiff is requesting a service award of up to $14,000, which will be paid from the amount awarded to Plaintiff's lawyers in connection with Post's payment under the settlement. *See* Doc. 23-1 at ¶ 12.

[7]    *See generally* https://www.ilymgroup.com/.

Amount and the manner by which such amount was calculated. *See* Agreement, Doc. 23-1 at ¶ 7 & Ex. A (Notice). In addition, the notice form: explains how Class Members can exclude themselves from or object to the settlement; describes the scope of the release; identifies class counsel; describes the fees/expenses sought by class counsel and the service awards sought by Plaintiff; and informs Class Members of the time and location of the final fairness hearing. *See generally id.* at Ex. A. The Administrator must follow detailed procedures to ensure that Class Member addresses are accurate and to re-mail any notice forms that are returned by the Postal Service as undeliverable. *See* Doc. 23-1 at ¶ 7.

Other than settlement awards attributable to Class Members who elect to exclude themselves from the settlement, ***no portion*** of the settlement fund will be returned to Defendants. *See id.* at ¶ 4 (defining Maximum Settlement Amount). Class Members are *not* required to complete any forms in order to receive a settlement payment. *See id.* at ¶ 10. Rather, the Administrator will mail settlement checks to all Class Members other than those who affirmatively exclude themselves from the settlement. *See id.* at pp. 3-4 (defining "Post Participating Class Member" and "Smucker Participating Class Member"), ¶ 10.[8] Any proceeds associated with uncashed checks will be donated to the Pennsylvania IOLTA Board. *See id.* at ¶ 10.

### F.    The Release.

Class Members who do not exclude themselves from the settlement will be bound by a

---

[8]    Because the Administrator will have already vetted the Class Member addresses in issuing the notice forms, the Class Members addresses will be especially reliable when the Administrator issues the settlement checks. Notwithstanding, as with the notice forms, the Administrator will follow strict procedures to ensure that any returned checks are re-mailed to updated addresses.

release that is limited to this litigation.  Specifically, Class Members release "any claims or causes of action arising during the Class Period which were raised or which are reasonably related to the claims raised in the Action, including all such claims arising under the Pennsylvania Minimum Wage Act ("PMWA"), the Fair Labor Standards Act ("FLSA") [9], or any state, local, common, or other law governing wages, and any related claims for liquidated damages, penalties, attorneys' fees and costs, expenses, and interest for such wages."  *See* Doc. 23-1 at p. 3 (defining "Released Claims" and "Released Parties").[10]

## II.    ARGUMENT

The settlement represents an excellent outcome for the Class Members and is the result of arms-length bargaining conducted after a robust exchange of documents and information.  As discussed herein, the Court should preliminarily approve the settlement, endorse the contemplated notice protocols and form, appoint W&S to serve as interim class counsel, and schedule a final fairness hearing:

### A.    Preliminary Approval Is Warranted.

Class action settlements must be approved by the Court as fair.  *See* Fed. R. Civ. P. 23(e)(2).[11]  As noted at page 2 *supra*, "preliminary" approval of the settlement results in Class Members receiving notice of the settlement.  Then, after Class Members have had an opportunity

---

[9]    As The Third Circuit has recently held, Section 216(b) of the FLSA "does not forbid the release of unasserted FLSA claims in opt-out settlements."  *Lundeen*, 156 F.4th 332, 2025 U.S. App. LEXIS 26901, at *15.

[10]    Plaintiff will also agree to a general release if the Court approves her requested service awards.  *See id.* at ¶ 6.

[11]    Our Court of Appeals has observed that "[t]he law favors" class action settlements because "substantial judicial resources can be conserved by avoiding formal litigation" and because parties "gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

to object to or exclude themselves from the settlement, the Court will preside over a hearing aimed at determining whether the settlement warrants "final approval."  *See NFL*, 961 F. Supp. 2d at 713-14.

The Third Circuit in *Lundeen v. 10 West Ferry Street Operations LLC*, 156 F.4th 332, __, 2025 U.S. App. LEXIS 26901 (3d Cir. Oct. 16, 2025) explained that "before directing that notice be issued to the class, the court generally grants preliminary approval of the settlement upon showing that it 'will likely be able to . . . approve the proposal under Rule 23(e)(2).'"  2025 U.S. App. LEXIS 26901, at *14 n.10 (citing to Fed. R. Civ. P. 23(e)(1)(B)(i)).  Specifically, Civil Rule 23(e)(1), entitled "Grounds for Decision to Give Notice," provides:

(e) Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

  (1) **Notice to the Class**.

    (A) **Information That Parties Must Provide to the Court**.  The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

    (B) **Grounds for a Decision to Give Notice**.  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1); *see, e.g.*, *Del Valle v. Empire Home Health Care, Inc.*, 2021 WL 5534703, 2021 U.S. Dist. LEXIS 153355, at *1 (E.D. Pa. Aug. 3, 2021); *In re Wawa Inc. Data Security Litig.*, 2021 WL 3276148, 2021 U.S. Dist. LEXIS 142025, at *33-34 (E.D. Pa. July 30, 2021).  As discussed in subsections 1 and 2 below, both of Civil Rule 23(e)(1)(B)'s preliminary approval requirements are satisfied.

1.    **Civil Rule 23(e)(1)(B)(i):  At the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."**

With the above in mind, we turn to the first half of the preliminary approval inquiry: whether, at the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B)(i).  As discussed below, each Rule 23(e)(2) factor is likely to be satisfied at the final approval stage:

*Rule 23(e)(2)(A) – Whether Plaintiff and class counsel "have adequately represented the class"*:  This factor focuses "on the actual performance of counsel acting on behalf of the class."  *Matthews v. Philadelphia Corporation for Aging*, 2025 WL 992198, 2025 U.S. Dist. LEXIS 62810, at *10 (E.D. Pa. April 1, 2025) (internal quotations omitted).  Here, this factor is likely to be satisfied at the final approval stage because, prior to settlement, the Parties engaged in a robust exchange of relevant payroll and timekeeping data and visited the Bloomsburg facility.

*Rule 23(e)(2)(B) – Whether the settlement "was negotiated at arm's length"*:  This factor is likely to be satisfied at the final approval stage because negotiations were at arms-length and overseen by a mediator.  *See Matthews,* 2025 U.S. Dist. LEXIS 62810, at *10-11; *Wood v. AmeriHealth Caritas Services, Inc.*, 2020 U.S. Dist. LEXIS 60787, at *18 (E.D. Pa. Apr. 7, 2020).

*Rule 23(e)(2)(C)(i) – Whether the relief "is adequate, taking into account the costs, risks, and delay of trial and appeal"*:  This factor "balances the relief that the settlement is expected to provide to class members against the cost and risk involved in pursuing a litigated outcome."  *Hall v. Accolade, Inc.*, 2019 WL 3996621, 2019 U.S. Dist. LEXIS 143542, at *10 (E.D. Pa. Aug. 23, 2019) (internal quotation omitted).  Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."

*Id.* (internal quotation omitted).  As the Third Circuit has observed, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution – a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly."  *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).

This factor is likely to be satisfied at the final approval stage.  With respect to the "**costs**" and "**delays**" associated with continued litigation, the Parties would be required to brief class certification in an adversarial context and at least one summary judgment motion.  Moreover, if the lawsuit proceeded to trial as a class action, the Parties would almost certainly disagree regarding the propriety and scope of "representative" evidence in this action.  Additionally, quantifying damages would entail expert testimony and possibly require the Court to resolve contested *Daubert* motions.

Regarding the settlement's "**adequacy**," while class counsel feels confident that this action could be successfully litigated on a class-wide basis, they cannot ignore the defenses that would be asserted by Defendants and their able counsel in the absence of settlement.

The Court is referred to the following passage drafted by Smucker's counsel regarding some of the risks as to the merits of the litigation if the case was not settled:

> Smucker acknowledges that there were litigation risks associated with Plaintiff's lawsuit. Notwithstanding, Smucker would have vigorously defended the case on the basis that none of the putative class members were entitled to any recovery. Specifically, Smucker appropriately paid employees for their "hours worked" on Smucker's premises and there were no pre-or post-shift activities that were not properly compensated.

Similarly, the Court is referred to the following passage drafted by Post's counsel regarding some of the risks as to the merits of this litigation if the case was not settled:

> Post has multiple written policies expressly informing employees that they are *never* to perform compensable work while off the clock.  Moreover, Post has paid all employees for several categories of time that exceed the PMWA's minimums.

11

In particular, Post pays for a lunch period of twenty-five or thirty minutes, depending on shift length.  In addition, Post pays gratuitous daily and weekly overtime.  Employees working eight-hour shifts receive overtime for any hours in excess of eight each day.  The same applies to ten- and twelve-hour shifts.  Finally, employees working eight-hour shifts receive double time for any hours worked on the seventh day each workweek, while those working longer shifts receive double time for hours worked on the sixth and seventh days.  All of these payments offset any off-the-clock time claimed by Plaintiff.

Viewed against such risks, the proposed settlement achieves an excellent result. Specifically, the $295,000 settlement fund payable by Smucker equates to approximately $11.26 for each of the 26,179 Eligible Weeks during which Class Members worked for Smucker during the Relevant Period [$295,000 / 26,179 weeks].  And the $600,000 settlement fund payable by Post equates to approximately $19.01 for each of the 31,559 weeks during which Class Members worked for Post during the Relevant Period [$600,000 / 31,559 weeks].[12]

According to Dr. Fox's analysis, the payment by Smucker represents over 2 minutes of unpaid time per day during Eligible Weeks and the payment by Post represents over 4 minutes of unpaid time per day during Eligible Weeks.  In the absence of settlement, it is quite possible that the factfinder would conclude that the amount of pre- and post-shift time was less than the amount achieved through the instant negotiations.

**Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of distributing relief" and "the method of processing class-member claims":**  This factor is likely to be satisfied at the final approval stage because Class Members are not required to file claim forms in order to receive payments and the notice form clearly describes the process for Class Members to object to or exclude themselves from the settlement.  *See Hall*, 2019 U.S. Dist. LEXIS 143542, at *11-

---

[12]    *See Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020) (in evaluating a settlement's fairness, "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees.")

12.

    *Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee award*:

This factor is likely to be satisfied at the final approval stage because W&S's requested

attorney's fees will fall ***below*** one-third of the settlement after reductions for litigation expenses

and the requested service awards to Plaintiff.  As such, the requested fee falls well within the

range of fees commonly approved by this Court in other wage-rights class action settlements.

*See, e.g.*, *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, 2019 U.S. Dist. LEXIS

144929, at *29 (E.D. Pa. Aug. 26, 2019) ("requested fee of one-third (1/3) of the settlement fund

is reasonable in comparison to awards in other cases"); *Galt v. Eagleville Hospital*, 310 F. Supp.

3d 483, 497 (E.D. Pa. 2018) (characterizing 35% fee as "within the range of fee awards accepted

by courts in the past"); *Altnor v. Preferred Freezer Services, Inc.* 197 F. Supp. 3d 746, 768-69

(E.D. Pa. 2016) (characterizing 33% fee recovery as "benchmark").  As such, the requested fees

are not an impediment to preliminary approval, with the understanding that the requested fees

will be carefully scrutinized pursuant to the Third Circuit's *Gunter* factors at the final approval

stage.  *See Del Valle*, 2021 U.S. Dist. LEXIS 153355, at *2 n.1 (review of attorney's fees

deferred until final approval where fee request "not clearly excessive or unreasonable"); *accord*

*Flores v. Eagle Diner Corp.*, 2019 WL 394335, 2019 U.S. Dist. LEXIS 141743, at *21 (E.D. Pa.

Aug. 21, 2019); *Hall*, 2019 U.S. Dist. LEXIS 143542, at *12.[13]

---

[13]  Similarly, courts generally defer any assessments of requested service award until the
final approval stage.  *See, e.g.*, *Hall*, 2020 U.S. Dist. LEXIS 52632, at *25-33.  Such an approach
is warranted where, as here, the requested combined $20,000 service award compares favorably
to awards approved in other class action settlements resolving wage rights lawsuits.  *See, e.g.*,
*Roxberry v. Snyders-Lance, Inc.*, 2017 U.S. Dist. LEXIS 193573, at *5-6 (M.D. Pa. Nov. 15,
2017) ($19,000); *In re Janney Montgomery Scott LLC Financial Consultant Litig.*, 2009 U.S.
Dist. LEXIS 60790, at *36 (E.D. Pa. July 16, 2009) ($20,000).

*Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3):*
Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, no such agreements exist.

*Rule 23(e)(2)(D) – Whether the settlement treats class members equitably relative to each other*: This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." *Fed. R. Civ. P. 23, Advisory Committee Notes to December 1, 2018 Amendments*. This factor is likely to be satisfied at the final approval stage because the allocation methodology contemplated in the Agreement each Class Member's settlement payment is proportional to the overtime-eligible weeks during the Relevant Period. *See supra* pp. 6.

In sum, at the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).

### 2. At the final approval stage, the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal."

Having determined that the Parties "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether, at the final approval stage, the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii). Here, Plaintiff seeks, for the sole purpose of settlement, a class comprised of hourly employees who were employed by Smucker and/or Post at the Bloomsburg facility between November 1, 2021 to September 9, 2025 who worked at least one Eligible Week. *See* Agreement (Doc. 23-1) at pp. 1, 2 and 4 (defining "Post Class Member" and "Smucker Class Member" and "Class Period").

To obtain class certification, Plaintiff must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). Next, she must satisfy Rule 23(b)(3)'s two

additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

As discussed below, and for settlement purposes only, Plaintiff is likely to satisfy the six Rule 23 requirements at the final approval stage:

**Numerosity**:  Rule 23(a)(1)'s numerosity requirement surely will be satisfied because the settlement class numbers over 600 individuals.

**Commonality/Predominance**:  The commonality "bar is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Commonality "does not require perfect identity of questions of law or fact among all class members."  *Reyes*, 802 F.3d at 486.  Since "'even a single common question will do,'" *id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospective class,'" *id.* (quoting *Rodriguez*, 726 F.3d at 382).

Meanwhile, Rule 23(b)(3)'s predominance inquiry (which is often undertaken alongside the commonality inquiry) asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation and citation omitted).  "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Id.* (internal quotation and citation

omitted).

Importantly, courts have found commonality (and predominance) in lawsuits brought by employees seeking compensation for time attributable to pre-shift and post-shift activities. Most notably, in *Bouaphakeo*, the Supreme Court upheld the certification of a class of food processing workers who sought compensation under both the FLSA and state law for "time spent donning and doffing required protective gear" at the beginning and end of the workday. *See generally* 577 U.S. at 452-62. The Court explained that common issues concerning the legal compensability of such time predominated over individualized issues pertaining to each class member's experience in the plant. *See id.* at 453-54.

In other PMWA class action lawsuits seeking damages for Pennsylvania warehouse workers for time spent in required pre- and post-shift activities, district courts have applied *Bouaphakeo* to grant class certification. For example, in *Davis v. Target Corporation*, 2023 U.S. Dist. LEXIS 214818 (E.D. Pa. Dec. 1, 2023), the court certified a class of warehouse workers advancing a similar claim under the PMWA as the one Plaintiff pursues here: payment for pre- and post- shift walking time between the building's entrance and time clocks. *See id.* at *2-4. Analyzing *Bouaphakeo*, the court concluded that the central question of whether the relevant time is categorically compensable predominates over individual differences in liability or damages." *Id.* at *15; *see also Villa v. Cargill Meat Solutions Corp.*, 2024 U.S. Dist. LEXIS 180090 (M.D. Pa. Oct. 2, 2024) (certifying class of employees seeking time associated with pre-shift COVID screening and time spent walking to and from timeclocks under PMWA).

Here, as in *Bouaphakeo, Davis,* and *Villa,* the legal compensability of the pre- and post-time under the PMWA is a threshold legal issue that is common to every Class Member and predominates over other issues.

*Typicality*: Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Generally speaking, lawsuits challenging the same conduct which "affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58; *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.*; *accord Stewart*, 275 F.3d at 227-28. Here, typicality exists because Plaintiff's central legal theory (that pre- and post-shift activities constitutes "hours worked" under the PMWA) is entirely aligned with those of the settlement Class Members' interests. Moreover, in attempting to quantify the uncompensated time, Plaintiff relies on the same payroll and other data that would be relied upon by other Class Members. Simply put, the claims and defenses underlying Plaintiff's individual PMWA claim are generally the same as the claims and defenses underlying the claims of the absent Class Members.

*Adequacy*: This requirement is satisfied if both: "(a) the plaintiff's attorney [is] qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff [does] not have interests antagonistic to those of the class." *Weiss v. York Hospital*, 745 F.2d 786, 811 (3d Cir. 1984) (internal quotations omitted). Here, these requirements are satisfied. Class counsel are experienced employment rights lawyers,[14] and Plaintiff's pursuit of this lawsuit demonstrates a genuine commitment to the Class Members' interests.

*Superiority*: Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of

---

[14]    *See generally* Gottesfeld Decl. (Doc. 23-2).

adjudication," *In re Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," *id.* at 315-16.  As discussed below, Plaintiff contends these factors are likely to favor class certification:

First, Rule 23(b)(3)(A) requires courts to consider Class Members' "interests in individually controlling the prosecution or defense of separate actions."  This requirement might prevent certification where Class Members' individual claims are "emotionally charged or involve significant damages amounts."  *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* at §4:69.  Here, however, Plaintiff's lawyers have estimated that Class Member's alleged unpaid overtime wages are relatively modest.  *See* p. 12 *supra*.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members.  This factor is not relevant because no related litigation exists.

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum."  Here, concentration of all claims in this Court makes good sense since the Class Members worked in Pennsylvania.  *See Hall*, 2020 U.S. Dist. LEXIS 52632, at *15.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action."  Fed. R. Civ. P. 23(b)(3)(D).  This requirement is automatically satisfied when a case is certified for settlement purposes.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In sum, at the final approval stage, the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii).

### B.    The Notice Form and Protocols Warrant Approval.

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Any notice form distributed to the class must convey "clearly and concisely . . . in plain, easily understood language" the following information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the above notice requirements are satisfied. As noted earlier, the Agreement requires the Administrator to mail to each Class Member a detailed notice form. *See* Doc. 23-1 at ¶ 7. These forms will be mailed to the Class Members' best and last known addresses provided by Defendants. *See id.* Before mailing, the Administrator will check all addresses against the National Change of Address Database. *See id.* Thereafter, the Administrator will follow strict protocols in updating the addresses of any Class Members whose notice forms are returned as undeliverable. *See id.* Rule 23 expressly contemplates such notice-by-mail protocols. *See* Fed. R. Civ. P. 23(c)(2)(B).

Moreover, the proposed notice form is clearly written and satisfies each of Rule 23(c)(2)(B)'s the content requirements. *See* Doc. 23-1 at Ex. A. In this regard, the Court is directed to Appendix 1, *see* Doc. 23-3, which demonstrates how the proposed notice form corresponds with the criteria listed in Rule 23(c)(2)(B).

### C.    Winebrake & Santillo, LLC Should Be Appointed Interim Class Counsel.

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may

designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3).  Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class.  *See id.* at 23(g)(1).  Here, W&S seeks appointment as interim class counsel.  W&S has extensive experience litigating wage and hour claims on a class action basis, *see* Gottesfeld Decl. (Doc. 23-2) at ¶¶ 3-19; and has diligently litigated this matter.

      **WHEREFORE**, Plaintiff respectfully asks the Court to grant this motion and enter the accompanying proposed order.

Date:  December 1, 2025               Respectfully,

                               /s/ Mark J. Gottesfeld
                               Pete Winebrake
                               Mark J. Gottesfeld
                               Winebrake & Santillo, LLC
                               715 Twining Road, Suite 211
                               Dresher, PA 19025
                               (215) 884-2491
                               pwinebrake@winebrakelaw.com
                               mgottesfeld@winebrakelaw.com

                               *Plaintiff's Counsel*