IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAVON GREEN, on behalf of herself and others similarly situated, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 24-6527 |
| POST CONSUMER BRANDS, LLC and THE J.M. SMUCKER COMPANY, | : | |
| | : | |
| Defendants. | : | |

**Perez, J.**                                                                                                **March 31, 2026**

**MEMORANDUM**

Plaintiff Shavon Green ("Plaintiff"), on behalf of herself and others similarly situated, brought this class action lawsuit against Defendants Post Consumer Brands ("Post"), LLC and The J.M. Smucker Company ("Smucker") to recover unpaid overtime wages owed under the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* Compl., ECF No. 1-3. Following some discovery and a settlement conference before a mediator, the parties reached a settlement agreement. Because this is a class action, the Court must certify the class and approve the settlement. *See* Fed. R. Civ. P. 23(e). Before the Court is Plaintiff's unopposed Motion for Final Approval of the Class Action Settlement ("Motion"). ECF No. 29. For the reasons stated herein, the Court finds the settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). The Court further finds class certification is appropriate under Rule 23(a) and (b)(3). Finally, the Court appoints Plaintiff's counsel Winebrake & Santillo, LLC ("W&S") as class counsel and grants the requests for attorney's fees and Plaintiff's service award are reasonable. Plaintiff's motion is, therefore, granted.

1

## I.      Background

Between November 2021 and the spring of 2023, Smucker owned and operated a pet manufacturing facility in Bloomsburg, PA (the "Bloomsburg Facility"), after which Post owned and operated the Bloomsburg Facility. ECF No. 1-3 at 8 ¶ 6. Both Defendants employed individuals at the Bloomsburg Facility and paid them an hourly wage. *Id.* at 9 ¶ 8. Plaintiff was one such hourly employee. *Id.* at 9 ¶ 9.

Plaintiff contends that Post and Smucker required their hourly employees at the Bloomsburg Facility to engage in activities at the beginning and end of the workday for which they were not compensated ("Pre- and Post-Shift Activities"). *Id.* at 9–10 ¶¶ 11, 12. "These activities included, *inter alia*, waiting for and obtaining gloves, gathering and donning [and doffing] uniforms, sanitizing books/shoes (including waiting time), and walking to [and from] assigned work locations within the Bloomsburg Facility." *Id.* According to Plaintiff, those activities were not included in employees' credited time worked, so they received no overtime wages for the time spent performing those activities during weeks in which they worked over 40 hours. *Id.* at 10 ¶ 13.

Plaintiff contends that Post and Smuckers' failure to pay employees overtime wages for the Pre- and Post-Shift Activities violates the PMWA, which entitles employees to compensation for "all hours worked" in a work week and to at least one and one-half times the regular pay rate for all hours worked over 40 hours in a week. *Id.* at 12 ¶¶ 26–28; 43 P.S. Labor § 333.104(a), (c). Defendants deny liability and argue the time spent on Pre- and Post-Shift Activities is not compensable and/or that one or both Defendants paid employees for this time. Post's Ans., ECF No. 11; Smucker's Ans., ECF No. 12.

On November 1, 2024, Plaintiff brought this class action lawsuit in the Philadelphia County Court of Common Pleas, asserting a single count under the PMWA. ECF No. 1-3 at 7, 12. Plaintiff

limits her claim to the time period between November 1, 2021, and September 9, 2025.[1] *Id.* at 10 ¶ 14. Plaintiff's proposed class includes hourly employees of Post and Smucker who worked at least one "Eligible Week" between November 1, 2021, and September 9, 2025. *See* Class Action Settlement Agreement (the "Settlement"), ECF No. 29-1 at 2, 4 (defining Post and Smucker Class Members). This includes a total of 842 Class Members (672 Class Members employed by Smucker and 627 Class Members employed by Post). *See* Castro Decl. ¶ 14, ECF No. 29-3. There are approximately 26,179 Eligible Weeks[2] pertaining to Smucker Class Members and approximately 31,559 Eligible Weeks pertaining to Post Class Members. *See id.*

The parties engaged in some discovery before attending an early mediation. Br. Supp. Mot., ECF No. 30 at 3. Specifically, Defendants produced payroll and timekeeping data for the Class Members, policy documents concerning Defendants' compensation policies, and collective bargaining agreements. *Id.* Plaintiff's counsel also conducted a site visit, where they informally measured the walk times between the facility entrance area and the time clocks and observed the locker rooms and various departments. *Id.* at 4. Based on this information, Plaintiff's counsel conducted a detailed class-wide damages model. *Id.* Plaintiff's counsel also engaged data analyst Liesl M. Fox, Ph.D., to conduct a damages analysis. *Id.* Post conducted a time study that measured the purported pre- and post-shift time. *Id.* After exchanging this information, the parties engaged in mediation with Michael Russel on September 9, 2025, where they reached a settlement agreement. *Id.* at 3; *see also* ECF No. 29-1.

---

[1] The PMWA has a three-year statute of limitations for overtime violations. *See Garcia v. Vertical Screen, Inc.*, 580 F. Supp. 3d 79, 91 n.7 (E.D. Pa. 2022). November 1, 2021, is three years before Plaintiff filed the Complaint. *See* Not. Removal, ECF No. 1.

[2] An "Eligible Week" is defined as "each week during the Class Period in which a Class Member was credited with working forty (40) or more hours (exclusive of vacation, sick or other leave time) according to Defendants' payroll data." ECF No. 29-1 at 2.

The Court preliminarily approved the settlement and notice process. ECF Nos. 26 & 28. Claims Administrator, the ILYM Group, Inc., mailed the Class Notice Packet to all 842 Class Members, with only 13 deemed undeliverable after the ILYM Group re-mailed 56 to updated addresses. *See* Castro Decl. ¶¶ 8–10, ECF No. 29-3.  Plaintiff then submitted this unopposed motion for final approval of the settlement, ECF No. 29, attaching the Settlement, ECF No. 29-1, and declarations from Plaintiff's counsel, 29-2, and the claims administrator, ECF No. 39-3. The Court held a hearing to resolve any objections and to hear argument from counsel on March 12, 2026. ECF No. 31. No objectors appeared, and no Class Members have opted out of the settlement. *See* ECF No. 29-3 at 4.

Under the Settlement, the parties agreed that Smucker will pay $295,000 plus any associated employer-side taxes. ECF No. 29-1 at 5. Those funds will be distributed as follows: $197,650 to the 672 Class Members employed by Smucker; and $97,350 to be paid to W&S for attorneys' fees, costs, and settlement administration costs, including a service award of up to $6,000 to the named Plaintiff. *Id.* at 9. The parties further agreed that Post will pay up to $600,000 plus any associated employer-side taxes, to be distributed as follows: $402,000 to the 627 Class Members employed by Post; and $198,000 to W&S for attorneys' fees, costs, and settlement administration costs, including a service award of up to $14,000 to the named Plaintiff. *Id.* at 5, 9–10.

The Settlement further provides that Class Members will share in the settlement proceeds proportional to the number of Eligible Weeks he/she worked for Smucker and/or Post. *Id.* at 3, 4 (defining "Post Payment Amount" and "Smucker Payment Amount"); *see also* ECF No. 29-3 at 4. Class Members will further release Post and Smucker from any claims or causes of action arising during the Class Period which were raised or which are reasonably related to the claims raised in

4

the Action. *Id.* at 6. The named Plaintiff, meanwhile, will generally release Post and Smucker from any and all claims (regardless of their relationship to this action) that occurred before Plaintiff signs the Settlement. *Id.*

## II.      Legal Standard

Under Federal Rule of Civil Procedure 23(e), class action settlements must be approved by the court. The court must first preliminarily approve the settlement and notice process. Fed. R. Civ. P. 23(e)(1). Then, notice must be disseminated to potential class members. *Id.* The court must then hold a final approval hearing, after which, it must certify the class and determine the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

## III.      Class Certification

The Court certifies the class for settlement purposes because it meets the requirements of Federal Rule of Civil Procedure 23(a) and (b). When approving a class action settlement, the court must first certify the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Settlement classes must satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and as relevant here, Rule 23(b)(3)'s requirements of superiority and predominance. *In re Nat'l Football League Players Concussion Injury Litig.* ("*NFL Concussion Litig.*"), 821 F.3d 410, 426 (3d Cir. 2016). The Court must make findings that the record establishes each requisite. *Id.*

### Numerosity

A class is sufficiently numerous when it is large enough that joinder would be impracticable. *Id.* "[N]umerosity is generally satisfied if there are more than 40 class members." *Id.* Here, there are 824 Class Members, so numerosity is satisfied.

**Commonality and Predominance**

"A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (cleaned up). Commonality "does not require perfect identity of questions of law or fact among all class members. . . [E]ven a single common question will do." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3d Cir. 2015) (citation omitted). Similarly, a class satisfies Rule 23(b)(3)'s predominance requirement if "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up).

Here, Plaintiff's claims relate to unpaid Pre- and Post-Shift Activities. The key legal question—whether the PMWA requires overtime wages for such activities—is common to all class members and predominates over any individual issues like variations in the amount of time spent on those activities and the number of overtime hours worked. Therefore, both commonality and predominance are established.

**Typicality**

Under Rule 23(a)(3), a class representative's claims must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). To satisfy this requisite, the named plaintiff must share similar legal theories or harm arising from the same practice as the class members such that she "will work to benefit the entire class through the pursuit of [her] own goals." *NFL Concussion Litig.*, 821 F.3d at 427–28 (citations omitted). This is a "low threshold," *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), meaning "[e]ven relatively pronounced factual

6

differences" will not defeat typicality "where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *NFL Concussion Litig.*, 821 F.3d at 428 (cleaned up). Here, Plaintiff is a former employee of both Post and Smuckers. She engaged in the Pre- and Post-Shift Activities in weeks where she worked overtime and was allegedly, therefore, entitled to overtime pay under the PMWA. Plaintiff's claims rely on the same payroll and other data that would be relied upon by other Class Members. Her claims arise from the same practice as the class members and rely on the same legal theories. Typicality is therefore satisfied.

**Adequacy of Representation**

Rule 23(a)(4) requires the Court to examine the adequacy of the representation by both the plaintiff's attorney and the plaintiff herself. *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984). First, "the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Id.* (citation omitted). Plaintiff's counsel W&S is experienced with class action employment rights litigation. *See* Gottesfeld Decl., ECF No. 29-2. W&S lawyers have served as lead counsel in several appeals resulting in precedential opinions in wage and hour law. *Id.* ¶ 4. W&S has resolved 272 separate class/collective actions in courts throughout the country. *Id.* ¶ 5. The individual attorneys who worked on this case have similarly impressive credentials related to wage and hour law and class action litigation. *See generally id.*

Second, "the plaintiff must not have interests antagonistic to those of the class." *Weiss*, 745 F.2d at 811 (citation omitted). Plaintiff does not appear to have any interests antagonistic to those of the class. Plaintiff has actively engaged with the lawyers in the litigation of this case, aided in the investigation, and participated in the mediation. *See* ECF No. 30 at 22. The requirements of Rule 23(a)(4) are also satisfied.

**Superiority**

In examining superiority, courts "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (cleaned up). This involves several factors, including the relative size of individual claims and the volume of those claims as aggregated, the existence of pending individual suits involving the same claims, individual class members' interest in controlling the prosecution of their claims, the desirability of concentrating the claims in the forum, and the potential difficulties of managing a class action. *Id.*; Fed. R. Civ. P. 23(b)(3)(A)–(D).

Applying these factors, first, class members' individual claims are relatively modest (between $7.55 and $2,081.14, with an average of $712.17) compared to the volume of the claims in the aggregate. *See* ECF No. 29-3 at 5. The expense of individual litigation would prevent many class members from obtaining relief. Second, no related litigation exists, indicating individual class members "lack[] a compelling interest to control the prosecution of their own claims." *In re Prudential*, 148 F.3d at 316. Third, the Bloomsburg Facility where all class members worked is located in this forum, so it is desirable for all the litigation to occur in this Court. Fourth, the manageability of the class action is irrelevant because this class is being settled for settlement purposes. *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems."); *see also Matthews v. Phila. Corp. for Aging*, No. 22-4632, 2025 U.S. Dist. LEXIS 62810, at *6–7 (E.D. Pa. Apr. 1, 2025).

IV.    **Appointment of W&S as Class Counsel**

Courts consider four non-exhaustive factors for appointing class counsel: "(1) the work counsel has done pursuing the claims; (2) counsel's experience handling similar claims in other

8

actions; (3) counsel's relevant legal knowledge; and (4) resources committed to representing the class." *Matthews*, 2025 U.S. Dist. LEXIS 62810 at *7–8 (appointing W&S as class counsel); *see also* Fed. R. Civ. P. 23(g)(1). W&S has diligently pursued the claims in this case by investigating the Bloomsburg Facility, preparing a detailed damages analysis, and hiring an expert. W&S has experience successfully litigating similar class actions involving wage and hour laws. W&S has also dedicated hundreds of hours litigating this case. *See* ECF No. 29-2. Accordingly, the Court appoints W&S as class counsel.

**V.       The Settlement Is Fair, Reasonable, and Adequate**

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, the court may approve a class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). District courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)  the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### The Class Representatives and Class Counsel Have Adequately Represented the Class.

This factor favors approval because the parties engaged in a robust exchange of data relevant to the claims and potential damages, including payroll and timekeeping data. *See* Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). ("[T]he focus at this point is on the actual performance of counsel on behalf of the class."). W&S also visited the Bloomsburg Facility to evaluate the time employees may spend on Pre- and Post-Shift Activities. Additionally, W&S hired an expert to conduct damages calculations for potential Class Members.

### The Proposal Was Negotiated at Arm's Length.

The parties hired a mediator, supporting a finding that the negotiations were at arms length. "The participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Caddick v. Tasty Baking Co.*, No. 2:19-cv-02106, 2021 U.S. Dist. LEXIS 70016, at *17 (E.D. Pa. Apr. 12, 2021) (cleaned up); *Wood v. AmeriHealth Caritas Servs., LLC*, Nos. 17-3697 and 19-2194, 2020 U.S. Dist. LEXIS 60787, at *18, 34 (E.D. Pa. Apr. 7, 2020).

### The Relief Provided for the Class Is Adequate.

This factor "balances the 'relief that the settlement is expected to provide to class members' against 'the cost and risk involved in pursuing a litigated outcome.'" *Hall v. Accolade, Inc.*, No. 17-3423, 2020 U.S. Dist. LEXIS 52632, at *20 (E.D. Pa. Mar. 24, 2020) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). It requires the Court to take into account

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2).

**Costs, Risks, and Delays:** Plaintiff asserts here that the costs and delays associated with continued litigation are high given that much of the life cycle of the case would remain, including class certification and summary judgment. Additionally, if the case proceeded to trial, it would require expert testimony and potential *Daubert* motions. Defendants have also put forth several defenses, which could ultimately succeed, denying class members relief entirely. Through the settlement, class members will receive between 2 and 4 minutes of unpaid overtime per day during Eligible Weeks, or either $11.26 or $19.01 for each Eligible Week worked. This factor weighs in favor of approval.

**Effectiveness of Method of Distribution of Relief:** Under this factor, the Court "scrutinize[s] the method of claims processing" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). Plaintiff has hired a claims administrator, which distributed notice of the settlement and will distribute the claims to all individuals who have been identified. The claims administrator successfully mailed by U.S. First Class Mail 829 of the 842 individuals on the class list, including 56 which were re-mailed to new addresses after they were returned undeliverable. ECF No. 29-3 at 3–4. Only 13 have been deemed undeliverable and were unable to be forwarded. *Id.* The settlement agreement does not require class members to file claims, and the notice forms provided clear instructions for objecting or opting out of the settlement. This factor also favors approval. *See Hall*, 2019 U.S. Dist. LEXIS 143542, at *11–12.

**Attorneys' Fees:** Plaintiff's counsel seeks fees and costs in the amount of 33% of the settlement, 28.4% of the total fund after subtracting costs and Plaintiff's service award. As discussed in more detail below, this is within the range of fees commonly approved in similar class action settlements. *See, e.g.*, *Hall*, 2020 U.S. Dist. LEXIS 52632, at *22 (approving 31% attorneys'

fees award and noting that "the average attorney's fees percentage in [surveyed class action] cases was 31.71% and that the median fee award was 33.3%" (citation omitted)).

### The Proposal Treats Class Members Equitably Relative to Each Other.

This factor favors approval. Each class member will be awarded a share of the settlement amounts proportional to the number of Eligible Weeks worked.

## VI.    Attorneys' Fees

The Settlement provides for a total award of $295,350 for attorneys' fees, costs, and claims administration expenses. ECF No. 29-3 at 4. That is 33% of the total settlement fund. After costs and expenses, the attorneys' fees amount to $254,321.05, which is 28.4% of the fund.

In analyzing a fee award, courts must consider seven factors:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). "These fee award factors need not be applied in a formulaic way and in certain cases, one factor may outweigh the rest." *Id.* (citation modified).

**Size of the Fund:** The total settlement fund is $895,000.00. W&S contends class members will receive a significant portion of their allegedly unpaid wages because they will be paid for 2 to 4 minutes of overtime for each Eligible Week. This is a significant portion of Class Members' allegedly unpaid wages.

**Objections:** No objections by class members have been raised. *See* ECF No. 29-3 at 4.

**Skill and Efficiency of Attorneys:** W&S efficiently guided this matter to a fair resolution, and the attorneys are experienced employment lawyers.

12

**Complexity and Duration of the Litigation:** This litigation has been actively litigated, including the exchange of discovery and the retention of an expert. It also involves complex questions of disputed law—whether the overtime wages are compensable under the PMWA.

**Risk of Nonpayment:** Absent approval of the attorneys' fee award, there is a risk that W&L would not be paid for its work in this case because it litigated this action on a contingency fee basis.

**Amount of Time:** As of the filing of the motion for class action settlement approval, W&S attorneys have spent 226.9 hours litigating this case. EC No. 29-2 at 8.

**Awards in Similar Cases:** A fee award of one-third of the fund is a standard award frequently approved in this district in other wage and hour class actions. *See, e.g.*, *Kelly v. J&J Serv. Sols. LLC*, No. 23-2854, 2024 U.S. Dist. LEXIS 148752, at *12 (E.D. Pa. Aug. 20, 2024) ("This district regularly approves attorney's fees that equal one-third of the settlement fund."); *Katz v. DNC Servs. Corp.*, No. 16-5800, 2024 U.S. Dist. LEXIS 20629, at *41 (E.D. Pa. Feb. 5, 2024) ("33 1/3 % of the settlement fund . . . is consistent with percentages in similar class actions."). W&S seeks a fee award of less than one-third (28.4%) of the fund after the costs and expenses have been deducted.

All factors weigh in favor of approval of the agreed upon fee award.

## VII.        Plaintiff's Requested Service Award

Plaintiff requests a combined $20,000 service award (2.23% of the settlement fund). Courts have discretion to award payment awards to class representatives "as a reward for the benefit visited on the class." *Hall*, 2020 U.S. Dist. LEXIS 52632 at *25 (quoting *In re Plastic Tableware Antitrust Litig.*, No. 94-3564, 1995 U.S. Dist. LEXIS 18166 (E.D. Pa. Dec. 4, 1995)). Service award payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of litigation, and to reward the public service of contributing to the

enforcement of mandatory laws." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (cleaned up).

Plaintiff's requested service award falls within the range courts have approved in class action settlements. *See, e.g.*, *Baez-Medina v. Judge Grp., Inc.*, No. 21-3534, 2023 U.S. Dist. LEXIS 124960, at *22 (E.D. Pa. July 20, 2023) (approving service award representing 2.85% of the settlement fund as reasonable because it fell below three percent of the total settlement); *Devine v. Ne. Treatment Ctrs., Inc.*, No. 20-02417, 2021 U.S. Dist. LEXIS 197924, at *24–25 (E.D. Pa. Oct. 14, 2021) (citing cases for proposition that service awards in "general range" of 3% of settlement fund warrant approval).

Furthermore, this litigation would not have occurred and Class Members would not be in this position to recover their unpaid overtime wages but for Plaintiff's involvement. Plaintiff sought out W&S for representation. Thereafter, Plaintiff actively participated in the litigation, including maintaining communication with counsel and making herself available for the full day of mediation. Plaintiff has also put her future employment prospects at risk by placing her name on the case. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189–88 (W.D.N.Y. 2005) ("[Service] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

Therefore, considering the risk to Plaintiff, her personal involvement in the lawsuit, and the lack of any objections, the Court will grant Plaintiff's requested service award. *See Devine*, 2021 U.S. Dist. LEXIS 197924 at * 24 (granting requested service award where named plaintiffs

brought the case to class counsel, faced potential reputational harm, advocated for their coworkers, maintained regular contact with counsel, and attended the settlement conference).

## VIII.    Conclusion

For the foregoing reasons, Plaintiff's unopposed Motion for Final Approval of the Class Settlement is granted. An appropriate Order follows.